# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

ADRIANA MORALES,

                1:18-cv-00996-NLH

          Plaintiff,

                **OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

_____

**APPEARANCES:**

RICHARD L. GROUP
LAW OFFICES OF RICHARD L. GROUP
102 SOUTH BURNT MILL RD.
VOORHEES, NJ 08043

    *On behalf of Plaintiff*

ROBERT S. DRUM
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET - SIXTH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**<u>HILLMAN</u>, District Judge**

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Supplemental

Security Income ("SSI")[1] under Title XVI of the Social Security

_____

[1] Supplemental Security Income is a program under the Social
Security Act that provides supplemental security income to
individuals who have attained age 65, or are blind or

Act.  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled since December 10, 2008.  For the reasons stated below, this Court will reverse the ALJ's decision and remand the matter for further proceedings.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Adriana Morales, claims that she cannot work and is entitled to SSI due to scoliosis, degenerative joint disease, Chron's disease, colitis and irritable bowel syndrome.[2]  On April 5, 2013, Plaintiff protectively filed an application for SSI,[3] alleging that she became disabled as of December 10, 2008.[4]

_____

disabled.  42 U.S.C. § 1381 et seq.

[2] The claimant was 30 years old at the time of her claim for SSI, which is defined as a younger individual (age 18-49). (20 C.F.R. § 416.963.)

[3] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits.  That date may be earlier than the date of the formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

[4] Even though Plaintiff contends that her onset date of disability is December 10, 2008, the relevant period for Plaintiff's SSI claim begins with her April 5, 2013 application date, through the date of the ALJ's decision on August 3, 2016.  See 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which

After Plaintiff's initial claim was denied on August 15, 2013, and upon reconsideration on October 28, 2013, Plaintiff requested a hearing before an ALJ, which was held on February 29, 2016. On August 3, 2016, the ALJ issued an unfavorable decision. Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on November 30, 2017, making the ALJ's August 3, 2016 decision final. Plaintiff brings this civil action for review of the Commissioner's decision.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

---

she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month she satisfies the eligibility requirements, which cannot predate the date on which an application was filed).

Substantial evidence means more than "a mere scintilla."
Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting
Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).
It means "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion." Id. The inquiry
is not whether the reviewing court would have made the same
determination, but whether the Commissioner's conclusion was
reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.
1988).

A reviewing court has a duty to review the evidence in
its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.
1984). "[A] court must 'take into account whatever in the
record fairly detracts from its weight.'" Schonewolf v.
Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting
Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301,
303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB,
340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record
his reasons for rejecting or discrediting competent evidence."
Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing
Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third
Circuit has held that an "ALJ must review all pertinent
medical evidence and explain his conciliations and

rejections." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d
112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider
and weigh all of the non-medical evidence before him. <u>Id.</u>
(citing <u>Van Horn v. Schweiker</u>, 717 F.2d 871, 873 (3d Cir.
1983)); <u>Cotter v. Harris</u>, 642 F.2d 700, 707 (3d Cir. 1981).

    The Third Circuit has held that access to the
Commissioner's reasoning is indeed essential to a meaningful
court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained
> the weight he has given to obviously
> probative exhibits, to say that his
> decision is supported by substantial
> evidence approaches an abdication of the
> court's duty to scrutinize the record as a
> whole to determine whether the conclusions
> reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978).

    Although an ALJ, as the fact finder, must consider and
evaluate the medical evidence presented, <u>Fargnoli</u>, 247 F.3d at
42, "[t]here is no requirement that the ALJ discuss in its
opinion every tidbit of evidence included in the record," <u>Hur
v. Barnhart</u>, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of
judicial review, a district court is not "empowered to weigh
the evidence or substitute its conclusions for those of the
fact-finder." <u>Williams</u>, 970 F.2d at 1182. However, apart
from the substantial evidence inquiry, a reviewing court is

entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.     Standard for SSI**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).

Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. §

1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[5] for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 416.920.  This five-step process is summarized as follows:

    1.    If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

    2.    If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

    3.    If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

    4.    If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

    5.    Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 416.20(b)-(f).

Entitlement to benefits is therefore dependent upon a

_____

[5] The regulations were amended for various provisions effective March 27, 2017.  See 82 F.R. 5844.  Because the ALJ issued his decision prior to this date, the amendments are not applicable to this appeal.

finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C. Analysis

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability through the end of the relevant time period. At step two, the ALJ found that Plaintiff's scoliosis, degenerative joint disease, Crohn's disease, colitis and irritable bowel syndrome were severe. At step three, the ALJ determined that Plaintiff's severe impairments or her severe

8

impairments in combination with her other impairments did not

equal the severity of one of the listed impairments.

Plaintiff did not have any past relevant work, but the ALJ

determined that Plaintiff's residual functional capacity

("RFC") rendered her capable of performing unskilled work at

the light exertional level[6] (steps four and five).[7]

The ALJ determined Plaintiff's RFC to be as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in
> 20 CFR 416.967(b) except she can frequently climb,
> balance, stoop, kneel, crouch, and crawl. Further, she

---

[6] See 20 C.F.R. § 404.1568 (explaining that unskilled work "is
work which needs little or no judgment to do simple duties
that can be learned on the job in a short period of time");
20 C.F.R. § 404.1567 ("Physical exertion requirements. To
determine the physical exertion requirements of work in the
national economy, we classify jobs as sedentary, light,
medium, heavy, and very heavy."); 20 C.F.R. § 404.1567 ("Light
work. Light work involves lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up
to 10 pounds. Even though the weight lifted may be very
little, a job is in this category when it requires a good deal
of walking or standing, or when it involves sitting most of
the time with some pushing and pulling of arm or leg controls.
To be considered capable of performing a full or wide range of
light work, you must have the ability to do substantially all
of these activities. If someone can do light work, we
determine that he or she can also do sedentary work, unless
there are additional limiting factors such as loss of fine
dexterity or inability to sit for long periods of time. . .
.").

[7] The ALJ also found that even though Plaintiff has a high
school education, because Plaintiff is not able to communicate
in English she is considered in the same way as an individual
who is illiterate in English.

must avoid concentrated exposure to hazards such as unprotected heights and moving machinery. Lastly, the claimant is limited to unskilled work involving routine and repetitive tasks with only occasional changes in the work setting.

(R. at 26.)

At the hearing, a vocational expert ("VE") testified that someone with Plaintiff's RFC would be capable of performing jobs such as an office cleaner, racker – bakery, and laundry worker. (R. at 30.)

Plaintiff argues that the ALJ erred by misconstruing the record evidence of Plaintiff's inflammatory bowel disease in determining that Plaintiff is capable of a limited range of unskilled light work. Plaintiff also argues that the ALJ erred in according little weight to the opinions of her treating gastroenterologist, Jorge A. Prieto, M.D.

These two arguments amount to an overall challenge to the ALJ's RFC determination and ultimate conclusion that Plaintiff is capable of performing full-time, unskilled, light work, which is 8 hours a day, five days a week, with two breaks, a lunch break, and not being off-task more than 10% of the day. See SSR 96-9p ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule."); (R. at 705, Testimony of

10

Vocational Expert). The Court finds that substantial evidence does not support the ALJ's RFC determination and his burden at step five to show that Plaintiff is capable of performing unskilled work at the light exertional level on a full-time basis.

In making this finding, the Court agrees with Plaintiff's arguments for how the ALJ erred:

1. Plaintiff argues that the ALJ failed to appreciate the nature of her Crohn's disease, where remissions and exacerbations are the hallmark of Crohn's disease and its chronicity even after surgery.[8] Plaintiff points to the ALJ's finding that "[t]he Plaintiff's allegations of pain, diarrhea, vomiting, 'flare up' every eight weeks, with the need to use the bathroom six times per day for ten to fifteen minutes per setting are unsubstantiated in the record." (R. at 28.) Plaintiff argues that the ALJ's assessment of her testimony

_____

[8] Crohn's disease is considered under the Social Security Regulations to be a type of inflammatory bowel disease. The Digestive System "Listings of Impairments" provides:

> Inflammatory bowel disease (5.06) includes, but is not limited to, Crohn's disease and ulcerative colitis. These disorders, while distinct entities, share many clinical, laboratory, and imaging findings, as well as similar treatment regimens. Remissions and exacerbations of variable duration are the hallmark of IBD. . . . Crohn's disease is rarely curable and recurrence may be a lifelong problem, even after surgical resection.

and the medical records to support that contention is
inaccurate.  Plaintiff contends that she specifically
testified she has Remicade infusions every eight weeks, which
limit her symptoms to two to three days a week, but by the end
of the infusion cycle at weeks six to seven as the medication
wears off, she experiences having to go to bathroom 4 to 6
times per day and vomiting, nausea and pain.  Plaintiff argues
that this cycle of "remissions and exacerbations" is
consistent with how the SSA describes IBD, and how her
treating gastroenterologist opined on her condition.

     2.   Plaintiff contends that the ALJ's conclusion that
her symptoms are "controlled" while on medication when she
experiences three to four instances of diarrhea per day (R. at
28) is an unqualified medical conclusion not supported by the
record.  Plaintiff argues that the medical records the ALJ
relied upon to support his finding indicate she had periods of
feeling better, but even with medication, the baseline was
still multiple bouts of diarrhea per day, along with pain and
fecal incontinence.

     3.   Plaintiff further argues that the ALJ ignored
medical evidence when he found that Plaintiff had gaps in
treatment from July 2008 to 2009, and then another gap in
treatment from 2010 through 2013.  The ALJ mentions a hospital

admission in August 2011, and then again in March 2013, but the medical records show that Plaintiff was attending regular office visits with Dr. Prieto since April 2011, undergoing testing and lab studies including a CT abdomen on October 3, 2011, and Remicade infusions every eight weeks that had commenced November 13, 2012. The ALJ also did not mention six separate abdominal CT scans performed on June 23, 2008, July 15, 2008, March 16, 2009, April 5, 2011, February 24, 2012, and September 23, 2015. Additionally, there was no mention of an abdominal obstruction series performed on March 24, 2013 which showed findings that favored an ileus, which is a temporary absence of the normal contractile movements of the intestines.

4.  Plaintiff also argues that the ALJ inexplicably downplayed her symptoms documented in her March 2013 and September 2015 hospitalizations. For the March 2013 admission, the ALJ noted that her symptoms were from traveler's diarrhea given her recent travel and she was "treated merely with IV hydration and antiemetic therapy and released." (R. at 28.) The ALJ omitted the portion of the treatment notes that diagnosed her with a Crohn's flare, and the traveler's diarrhea in the alternative. (R. at 505-28.) For the September 2015 hospitalization, the ALJ stated that

13

Plaintiff's "description of the severity of the pain and associated symptoms is unfounded within the medical file, both objectively and subjectively." (R. at 28.) The ALJ failed to mention, however, that Plaintiff was admitted to the hospital for four days due to very severe right lower quadrant pain, nausea and vomiting (R. at 674-81), along with various adverse findings on the CT scan of the abdomen/pelvis supporting diagnoses of Crohn's flare and partial small bowel obstruction (R. at 677-80).

5.    Plaintiff points out that the ALJ did not mention significant portions of an internal medicine consultative examination with Ken Klausman, M.D. on August 1, 2013. (R. at 600-04.) Plaintiff told Dr. Klausman she last worked in a nursery and that she was unable to work due to an inability to stand for long periods of time, lifting and constantly needing to use the bathroom. On exam she was 5 foot, 5 inches and 113 pounds; she had limited range of motion with lumbar flexion with epigastric pain as well as bilateral epigastric pain on straight leg raise maneuver. On neurological exam she made errors as to the date, counting backwards by 3 and with memory. Dr. Klausman confirmed the diagnosis of Crohn's Disease.

6.    In addition to failing to consider significant

medical evidence that supports the disabling nature of
Plaintiff's impairments, Plaintiff contends that the findings
and opinions of her long-time treating gastroenterologist, Dr.
Prieto should have been given controlling weight because they
were not inconsistent with the other substantial evidence of
record. Plaintiff argues that if Dr. Prieto's opinions are
credited with respect to the severity of the Plaintiff's pain,
fatigue, need to lie down during the day (on an unpredictable
basis), "constantly" diminished attention and concentration,
the need for many unscheduled breaks during an 8-hour work
day, and likely absences from work, Plaintiff would
undoubtedly be found disabled.

In making the RFC assessment the ALJ was required to
consider all evidence before him. "In doing so, an ALJ may
not make speculative inferences from medical reports," he is
"not free to employ [his] own expertise against that of a
physician who presents competent medical evidence," and
"[w]hen a conflict in the evidence exists, the ALJ may choose
whom to credit but cannot reject evidence for no reason or for
the wrong reason." Plummer v. Apfel, 186 F.3d 422, 429 (3d
Cir. 1999) (citation omitted). Additionally, a treating
physician's opinions are typically entitled to "great weight,"
and an ALJ may only reduce his reliance upon a treating

physician's opinions if those opinions are inconsistent with other medical evidence, and if he explains his reasoning. Id. at 439 ("[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them. . . . [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected.").

What the Third Circuit admonished in Plummer and Cotter is what Plaintiff contends the ALJ did in this case. The Court agrees. The ALJ noted that Plaintiff experienced a clinical remission in May 2015, and used that finding to afford little weight to Dr. Prieto's entire, continuous and regular treatment history with Plaintiff which began in April 2011 (R. at 29), and to discount the severity of Plaintiff's pain and associated symptoms as unfounded (R. at 28).

The ALJ failed to reconcile that assessment with other findings in his decision, however, including: (1) Plaintiff suffered a Crohn's flair-up in September 2015, which is four months after the reported clinical remission and required a

16

four-day hospitalization (R. at 28); (2) as defined under SSA
regulations, "[r]emissions and exacerbations of variable
duration are the hallmark of IBD" (R. at 26, citing to Listing
5.06); and (3) out of an eight-week Remicade cycle in addition
to her other medication, for about six weeks, Plaintiff
experiences three to four incidents of diarrhea a day for
several days of each week, in addition to other symptoms, and
for two weeks while the Remicade wears off, Plaintiff must go
to the bathroom four to six times per day every day and
experiences vomiting, nausea and pain (R. at 28).

Moreover, the ALJ improperly found that Plaintiff had
gaps in treatment, which is contradicted by the medical
evidence.  Additionally, the ALJ failed to recognize that
except when she relocated to New Jersey after her surgery in
2009 and due to pregnancy in 2014, there was no significant
deviation from treatment or prescribed medications.  The ALJ
also improperly determined that Plaintiff's symptoms were
"controlled" while on medication, but that "control" still
resulted in three to four instances of diarrhea per day for
several days a week.

In sum, there is no evidence in the record that refutes
that even when compliant with her medication regime,
Plaintiff's best outcome is that for four to five weeks out of

every eight, Plaintiff experiences multiple bouts of diarrhea almost every day. That unrefuted finding compels the conclusion that the ALJ's determination that Plaintiff retained the RFC perform unskilled work at the light exertional level on a sustained, full-time basis was in error.

The ALJ also erred at step five, for which he has the burden of proving that Plaintiff is capable of performing work which exists in the national economy. At this step, the ALJ asked the VE a hypothetical question: "If the hypothetical individual were off task more than 10% of the day, in addition to regular scheduled breaks, could that individual perform the jobs that you identified?" The VE answered, "No, your honor. That would preclude employment at the unskilled level. (R. at 705.) The ALJ also asked the VE: "[H]ow many absences per month do employer customarily tolerate from employees?" The VE answered, "No more than twice a month, your honor." (Id.) Plaintiff's representative asked the VE a follow up question: "An individual who has frequent need to use the bathroom, requires to be near a bathroom, and say they have that need four or five times a day," "even it was not happening every day but two or three workdays out of a workweek," "is that going to affect their ability to succeed with the jobs that you have described?" The VE answered, "I think that would

preclude employment that would go off task," and "off-task is really determined on a cumulative basis, it's not necessarily by the hour or by the day."  (Id.)

"An ALJ's hypothetical question to a VE must accurately portray the claimant's individual impairments supported by the record."  Holler v. Barnhart, 102 F. App'x 742, 745 (3d Cir. 2004) (citing Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)).  Here, despite the testimony from the VE, in finding that Plaintiff was capable of performing jobs in the national economy, the ALJ did not account for the unrefuted need for Plaintiff to be off-task to the degree the VE testified would not support any available jobs.  Even accepting that Plaintiff's Crohn's disease was "controlled," the ALJ failed to craft an RFC that properly reflected that "controlled" level, and in turn failed to consider the VE's testimony on a hypothetical that actually encompassed that level.  The ALJ's hypothetical question was correct, but he ignored the VE's answer to it.  The ALJ therefore failed to carry his burden in the final step of the sequential step analysis.

**III. CONCLUSION**

Plaintiff asks that the Court reverse the ALJ's decision and award her benefits.  In the alternative, she seeks a

reversal and remand to the ALJ for further consideration. "A
reversal, as opposed to a remand, is in order only where a
fully developed administrative record demonstrates that the
claimant is clearly entitled to benefits, and thus a new
administrative hearing would serve no useful purpose."
Podedworny v. Harris, 745 F.2d 210, 224 (3d Cir. 1984).  If
the ALJ's explanation of his decision is "hopelessly
inadequate," the case should be vacated and remanded to the
ALJ to fully develop the record and explain his findings.
Correa ex rel. Correa v. Commissioner of Social Sec., 381 F.
Supp. 2d 386, 396 (D.N.J. 2004) (quoting Burnett v. Social
Security, 220 F.3d 112, 120 (3d Cir. 2000)).  "Remand is
appropriate where . . . relevant and probative evidence was
not explicitly and accurately weighed in arriving at a
decision on the plaintiff's claim for disability benefits."
A.B. on behalf of Y.F. v. Colvin, 166 F. Supp. 3d 512, 522
(D.N.J. 2016) (citing Dobrowolsky v. Califano, 606 F.2d 403,
407 (3d Cir. 1979)).

    The Court finds that reversal and remand is appropriate
in this case.  The ALJ did not accurately weigh the relevant
and probative evidence in making the RFC determination and
then use that properly established RFC to determine whether
jobs exist in the national economy that Plaintiff is capable

of performing.  The matter will be remanded to the ALJ so that

he may properly support his RFC assessment and fulfill his

burden at step five.

   An accompanying Order will be issued.


Date: __June 27, 2019__          ___s/ Noel L. Hillman_____
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.